STATE OF NORTH CAROLINA <span>F I L E D</span>     IN THE GENERAL COURT OF JUSTICE
COUNTY OF FORSYTH                           SUPERIOR COURT DIVISION
                                            Case No.: 17-CVS-2393

2011 APR 25  P 4: 55

FORSYTH CO., C.S.C.

NOVANT HEALTH, INC.,

    Plaintiff,

    BY

v.                                          **COMPLAINT**
                                            **(Jury Trial Demanded)**
FEDERAL INSURANCE COMPANY, INC. and
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

    Defendants.

---

Plaintiff Novant Health, Inc., for its complaint against Defendants, alleges as follows:

## INTRODUCTION

This is an insurance coverage dispute in which plaintiff Novant Health, Inc. seeks a

declaration that the defendants are obligated to provide coverage, under primary and excess

fiduciary liability insurance policies defendants issued to Novant and up to the limits of those

insurance policies, for the $32 million settlement that Novant entered into in an underlying

lawsuit captioned *Kruger v. Novant Heath, Inc.* Novant also seeks a declaration of the parties'

rights and obligations under the insurance policies at issue, as set forth in this Complaint.

Further, Novant seeks damages for the defendants' breaches of their obligations under those

policies, bad faith, and unfair claims settlement practices in refusing to indemnify Novant for the

settlement, in adopting coverage positions unsupported by the policies, the facts, or North

Carolina law, and for the defendants' other actions and inactions as set forth in this Complaint.

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Novant Health, Inc. ("Novant") is a not-for-profit, integrated system of

physician practices, hospitals, outpatient centers, and other medical service providers serving

1

communities in North Carolina, South Carolina, Virginia, and Georgia. Novant is headquartered in Winston-Salem, North Carolina and employs more than 24,000 people.

2.      Defendant Federal Insurance Company ("Chubb") is an insurance company with its principal place of business in Warren, New Jersey and licensed to do business in the state of North Carolina.

3.      Defendant Travelers Casualty and Surety Company of America ("Travelers") is an insurance company with its principal place of business in Hartford, Connecticut and licensed to do business in the state of North Carolina.

4.      Chubb and Travelers are subject to personal jurisdiction in North Carolina. Both defendants issued the insurance policies at issue in this lawsuit to Novant in North Carolina and, upon information and belief, have issued thousands of insurance policies to other policyholders in North Carolina in addition to the policies issued to Novant that are at issue in this lawsuit.

5.      Chubb and Travelers have purposefully availed themselves of the laws of the State of North Carolina and have established sufficient contacts with the State such that they are both subject to general and specific personal jurisdiction in this State for purposes of this lawsuit.

6.      Chubb and Travelers additionally are subject to personal jurisdiction in this State pursuant to N.C. Gen. Stat. § 1-75.4(10) and other provisions of N.C. Gen. Stat. § 1-75.4.

7.      Venue is proper in this county pursuant to N.C. Gen. Stat. § 1-80 and/or § 1-82.

2

## FACTUAL ALLEGATIONS

### A.   Novant's Retirement Plans

8.   During the relevant time period, Novant sponsored a number of defined contribution retirement plans for its employees, collectively referred to as the "Plan".

9.   The Plan's total assets increased during the period relevant to this dispute, from roughly $650 million in early-2008 to over $1.6 billion by the end of 2013.

10.   During the relevant time period, the Plan offered participants more than twenty investment options that spanned the risk/return spectrum.

11.   The expense ratios for each of the mutual funds in the Plan ranged from 0 to 1.68 percent. As is common for retirement plans like Novant's Plan, each of the mutual funds offered through the Plan refunded a portion of these fees back to the Plan to offset the Plan's administrative expenses for the benefit of Plan participants, which is a practice known as "revenue sharing."

12.   During the relevant period, the Plan was managed by a designated fiduciary committee comprised of Novant employees (the "Plan Committee" or "Committee"). Among other things, the Plan Committee was responsible for selecting Plan investment options and managing relationships with service providers to the Plan.

13.   During the time period relevant to this dispute, the Plan utilized the services of several third-party service providers.

14.   Great-West Life & Annuity Insurance Company ("Great-West") provided recordkeeping services to the Plan. These recordkeeping services included maintaining accounts for the participants in the Plan, valuing Plan assets, transferring and distributing funds to participants, and performing compliance services such as the preparation of fee disclosures, tax

3

forms, quarterly statements, and participant communications. Great-West was paid an annual per-participant fee for these services, which payment came directly from the revenue sharing funds generated by the Plan's various mutual fund offerings. Novant terminated Great-West's services effective July 2016.

15.     D.L. Davis & Company ("DLD") provided participant communication and investment education services to the Plan. DLD educated Novant's employees about the Plan and the basics of retirement planning, assisted employees in enrolling in the plan, counseled employees regarding the Plan, and counseled the Committee on the selection of Plan investment funds and other matters. For its services, DLD received a contractual fee of $65,000 per month or .15 percent of total Plan assets, whichever was greater. Beginning in April 2012, DLD's monthly fee was capped at $156,250. Novant terminated DLD's services effective December 31, 2015.

16.     During the relevant period, the Plan paid the DLD fees using the following process:

        a.     DLD submitted a monthly bill for its fees;

        b.     Novant, as Plan sponsor, paid the monthly DLD bill on behalf of the Plan.

        c.     Periodically, when the Plan had accumulated sufficient revenue sharing funds to reimburse Novant, the Plan reimbursed Novant (without interest) for the amounts advanced by Novant on behalf of the Plan. These reimbursements typically occurred on annual basis.

17.     The Plan also used the above-described process to pay vendors other than DLD, including the Plan's auditor and legal counsel.

4

18.    Novant advanced funds to pay the DLD monthly fees and other vendor fees on behalf of the Plan as a convenience to Plan participants and to simplify Plan administration. Because the revenue sharing funds received by the Plan were variable in amount and were received intermittently, the Plan did not always have sufficient funds to cover vendor fees as they became due each month. Rather than forcing Plan participants to pay vendor fees directly via monthly deductions from their retirement accounts, Novant instead advanced vendor fees on behalf of the Plan.

19.    Novant received no financial benefit from this arrangement. Rather, Novant paid the monthly DLD fees and other vendor fees on behalf of the Plan and received reimbursement from the Plan at a later date for exactly the same amount it had advanced on the Plan's behalf. After receiving reimbursement from the Plan, Novant's financial position, exclusive of interest, was identical to what it had been before it advanced payment to vendors on the Plan's behalf. If one considers the time value of money, Novant was actually worse off financially for having provided advances on behalf of the Plan, as Novant lost any ability to earn interest on the funds advanced to DLD and other vendors on behalf of the Plan during the period it awaited reimbursement from the Plan.

20.    The Plan's governing documents expressly contemplated the advancement of fees by Novant to Plan service providers and expressly authorized the use of Plan funds to reimburse Novant for payment of such fees. ERISA and Department of Labor regulations likewise expressly permit the advance payment of expenses by a plan sponsor on behalf of a plan with subsequent reimbursement to the plan sponsor. During the relevant time period, most defined contribution plans in the United States used some form of revenue sharing to cover administrative expenses.

5

### B. Novant's Fiduciary Liability Insurance Policies

21. During the relevant period, Novant had a layered program of liability insurance designed to provide coverage for, among other things, lawsuits alleging that Novant or the Plan Committee breached fiduciary duties imposed by the Employee Retirement Income Security Act ("ERISA"). Novant's fiduciary liability insurance program was comprised of two policies issued by the defendants with combined limits of $25 million.

22. Chubb issued a primary fiduciary liability policy, Health Care Portfolio Policy No. 8168-3343 (the "Chubb Policy") to Novant, providing coverage during the period from June 30, 2013 to June 30, 2014. A copy of the Chubb Policy is attached as Exhibit A.

23. The Chubb Policy is valid and enforceable.

24. The Chubb Policy insures Novant, its "Subsidiaries" (as defined in the Chubb Policy), and individual employees, directors, officers or other executives of the Plan, Novant or its Subsidiaries (collectively, the "Insureds"). Members of the Plan Committee and the Novant Board of Trustees (collectively, the "Individual Insureds") are Insureds under the Chubb Policy.

25. Insurance clause 1 of the Chubb Policy Provides, in relevant part:

> "The Company shall pay, on behalf of the Insureds, Loss for which the Insureds become legally obligated to pay on account of any Fiduciary Claim first made against the Insureds during the Policy Period . . . for a Wrongful Act committed, attempted or allegedly committed or attempted before or during the Policy Period by such Insureds, or by any person for whose Wrongful Acts the Insureds are legally responsible."

26. The Chubb Policy defines the term "Loss" to mean, in relevant part, "the amount that any Insured becomes legally obligated to pay on account of any Fiduciary Claim, including but not limited to damages, judgments, settlements, pre-judgment and post-judgment interest, [and] Defense Costs."

6

27.     The Chubb Policy defines the term "Fiduciary Claim" to include "a written demand for monetary damages" and "a civil proceeding commenced by the service of a complaint or similar pleading . . . against any Insured for a Wrongful Act."

28.     The Chubb Policy defines "Wrongful Act" to include, with respect to the Plan: "(a) any breach of the responsibilities, obligations or duties imposed by ERISA upon fiduciaries of the Sponsored Plan committed, attempted, or allegedly committed or attempted by an Insured in the Insured's capacity as such; (b) any negligent act, error or omission in the Administration of any Plan committed, attempted, or allegedly committed or attempted by an Insured in the Insured's capacity as such; or (c) any other matter claimed against an Insured solely by reason of the Insured's service as a fiduciary of any Sponsored Plan."

29.     The Chubb Policy defines "Defense Costs," in relevant part, to mean "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees or benefits of the directors, officers or Employees of the Organization) incurred in defending any Claim."

30.     The Plan is a "Plan" and "Sponsored Plan" as those terms are defined in the Chubb Policy.

31.     The Chubb Policy has a limit of liability of $15 million for each Fiduciary Claim. Chubb's obligation to pay is subject to a $100,000 retention to be paid by Novant. Under the Chubb Policy, the payment of Defense Costs by Chubb reduces (and may exhaust) the policy's limits of liability.

32.     The Chubb Policy contains an exclusion, Exclusion 4(m), which precludes coverage for loss resulting from Novant gaining a profit to which it is not legally entitled. However, the Chubb Policy provides that this exclusion applies only if there is a final judgment

7.

of the factual basis for the exclusion in a lawsuit brought by a third party against Novant. In other words, the exclusion does not apply where a lawsuit results in a settlement, rather than a final judgment. Likewise, the exclusion cannot apply based on a judgment in an insurance coverage lawsuit between Novant and Chubb or Travelers.

33.    Exclusion 4(m) excludes coverage for Loss on account of any Claim:

(m) based upon, arising from or in consequence of:

(i) any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such Insured, if a final judgment or final adjudication in any proceeding establishes such a deliberately fraudulent act or omission or willful violation; or

(ii) such Insured having gained any profit, remuneration or other advantage to which such Insured was not legally entitled, if a final judgment or final adjudication in any proceeding establishes the gaining of such a profit, remuneration or advantage.

34.    Endorsement 10 to the Chubb Policy further provides:

With respect to Exclusion 4(m), as amended above, the term "proceeding," as used therein, shall not include any declaratory proceeding brought by or against the Company.

Accordingly, the term "proceeding" as used in Exclusion 4(m) of the Chubb Policy does not include this lawsuit.

35.    Travelers issued to Novant Wrap Excess Policy No. 105642191 (the "Travelers Policy") covering the period from June 30, 2013 to June 30, 2014. A copy of the Travelers Policy is attached as Exhibit B.

36.    The Travelers Policy is valid and enforceable.

37.    The Travelers Policy is a following form excess policy that provides coverage based on the same terms as the Chubb Policy. The Chubb Policy is the only insurance underlying the Travelers Policy.

8

38.     The Travelers Policy has a limit of liability of $10 million for each Fiduciary Claim.

39.     Chubb had been Novant's fiduciary liability insurer since at least 2002. At the time that Insurers issued the Chubb Policy and Travelers Policy, they had access to the Plan's governing documents and other information sufficient to inform them that Novant's practice was to advance payment of DLD's fees and then receive reimbursement from the Plan. The Insurers never questioned or objected to this practice prior to issuance of the Policies.

## C.     The Kruger Lawsuit and Kruger Settlement

40.     On March 12, 2014, a group of participants in the Plan commenced a putative class action lawsuit in the United States District Court for the Middle District of North Carolina, captioned *Karolyn Kruger, M.D., Candace Culton, Frances Baillie, Eileen Schneider, Judy Lewis, Linda Christensen, and Teresa Powell, individually and as representatives of a class of similarly situated persons, and on behalf of the Novant Health Retirement Plus Plan v. Novant Health, Inc., Administrative Committee of Novant Health, Inc., Novant Health Retirement Plan Committee, and John Does 1-40*, case number 1:14-cv-208 (the "Kruger Lawsuit" or the "Lawsuit").

41.     The members of the Plan Committee were named as defendants John Does 1-40 in the Kruger Lawsuit.

42.     In their complaint, plaintiffs in the Kruger Lawsuit alleged that Novant, the Plan Committee, and the Plan's other fiduciaries breached their duties under Section 404 of ERISA, 29 U.S.C. § 1104, by (1) selecting and maintaining mutual funds for the Plan that charged excessive fees (the "Mutual Funds Fees" claim); (2) causing the Plan to pay Great-West excessive recordkeeping fees (the "Recordkeeping Fees" claim); and (3) causing the Plan to pay

9

excessive fees to DLD for investment consulting and participant education and communication services (the "DLD Fees" claim).

43.     Although Novant had initially selected another law firm to represent it in the Kruger Lawsuit, Chubb rejected Novant's choice and engaged the law firm of Morgan Lewis & Bockius to defend Novant in the Kruger Lawsuit. The costs paid by Chubb for Novant's defense eroded the limit of liability available under the Chubb Policy.

44.     Based on the outcome of other similar ERISA class action lawsuits and its own investigation of the allegations in the Kruger Lawsuit, Morgan Lewis advised Novant in October 2014 that the defendants' total exposure, including plaintiffs' and defendants' fees and costs was approximately $46-81 million – far in excess of the $25 million combined limits of the Chubb and Travelers Policies – and that a settlement of up to $35 million would be reasonable. Morgan Lewis also advised that plaintiffs' and defendants' fees and costs alone could exceed the $15 million limits of the Chubb Policy and might also approach or exceed the $10 million in additional limits available under the Travelers Policy.

45.     In April 2015 the Kruger Plaintiffs demanded $32 million to settle the Kruger Lawsuit. By this time, Chubb had paid approximately $1.4 million in Defense Costs, reducing the available limits under the Chubb Policy from $15 million to approximately $13.6 million.

46.     Based on any reasonable evaluation of the plaintiffs' claims, the evidence that would be adduced in discovery and in light of the outcome of historical class action lawsuits alleging violation of ERISA fiduciary duties in connection with payments made by a plan to service providers, the Kruger plaintiffs' demand was easily within the expected range of damages, defense costs and plaintiffs' attorneys' fees that Novant would incur if the case proceeded through trial.

10

47.     Indeed, Morgan Lewis, the attorneys appointed by Chubb to defend Novant in the Kruger Lawsuit, advised Novant in April 2015 that Novant's exposure, including plaintiffs' and defendants' fees and costs, could be as high as $86 million, that its exposure even without the DLD Fees Claim could be as high as $62 million, and that it was reasonable for Novant to accept Plaintiffs' $32 million settlement demand. Morgan Lewis's advice took into account additional information it had learned concerning the Kruger Plaintiffs' arguments.

48.     Novant demanded that Chubb and Travelers make their remaining policy limits available to resolve the Kruger Lawsuit. Novant also informed the Insurers that the defendants would pay that portion of the $32 million settlement demand that exceeded the remaining limits of the Policies.

49.     It was clear that that the plaintiffs' claims were covered under the Chubb and Travelers Policies and that the exposure of Novant and the Individual Insureds at trial far exceeded the combined remaining limits under those policies. It was also clear that, if the case were litigated through trial, little or none of the combined policy limits would be available to pay a judgment entered against Novant due to erosion of the limits through payment of defense costs. Nevertheless, the Insurers refused the demand of Novant to provide coverage for a settlement with the Kruger plaintiffs.

50.     Following the advice of Chubb's chosen counsel, Morgan Lewis, and with the consent of the Insurers to enter into the settlement, the Novant Insureds agreed to settle the Kruger Lawsuit (the "Kruger Settlement"). Under the terms of the Kruger Settlement, Novant agreed to pay a total of $32 million to resolve the Kruger lawsuit, to be deposited into a settlement fund for payments to class members and payment of settlement administration expenses. Further, under the Kruger Settlement Novant agreed not to oppose an award of

11

attorneys' fees to plaintiffs' counsel for 1/3 of the settlement amount ($10,666,666) plus expenses. The Kruger Settlement also included a broad release of the Novant Insureds from claims relating to, among other things, alleged excessive fees paid in connection with the Plan. In the Kruger Settlement, Novant expressly denied liability for the Kruger Plaintiffs' claims, and the plaintiffs agreed that the Settlement did not constitute an admission of liability of any kind. The Kruger Settlement was approved by the court on September 29, 2016.

### E. Defendants' Breaches of the Insurance Policies and Bad Faith

51. The Kruger Settlement is covered by the Chubb Policy and Travelers Policy, up to the limits of those Policies.

52. Chubb wrongfully denied coverage for the Kruger Settlement.

53. Chubb claimed that the DLD Fees claim in the Kruger Lawsuit was uninsurable as a matter of public policy. Chubb claimed that because Novant advanced DLD's fees and then was reimbursed – rather than the Plan paying DLD directly – the reimbursements to Novant constituted amounts that Novant was "not legally entitled to receive" and that "any amounts that Novant is required to repay to the Novant Plan because it was not legally entitled to receive them would be a disgorgement of an ill-gotten gain."

54. Chubb's "disgorgement" theory had no support in fact or in law, because Novant received no "ill-gotten" gain by advancing payments on behalf of the Plan, and in fact gained nothing at all by doing so. Indeed, if any party received a benefit due to excessive fees charged by DLD, it was DLD itself.

55. Furthermore, ERISA and Department of Labor regulations explicitly permit plan sponsors to advance payment of administrative expenses on behalf of the Plan, such as the DLD and Great West fees, and to receive repayment of these loans at a later date. Likewise, the Plan's

12

governing documents explicitly authorize Novant to advance administrative expenses on behalf of the Plan and to receive reimbursement from Plan funds. The Department of Labor specifically analyzed Novant's practice of advancing payment for administrative expenses on behalf of the Plan and found no fault with any requested reimbursement for which Novant had appropriate substantiation.

56.     Chubb offered no legitimate legal support for its "disgorgement" position. There is no controlling North Carolina authority that recognizes "disgorgement" as a defense to an insurer's obligations to pay under a liability insurance policy. Furthermore, Chubb did not identify a single case in which a court had held that a settlement amounted to "disgorgement" where a third party, not the insured, had received a financial benefit.

57.     Even if there were factual or legal support for Chubb's "disgorgement" argument, Chubb still cannot rely on this argument to disclaim or reduce coverage for the Kruger Settlement.

58.     The Chubb Policy, through Exclusion 4(m) as amended by Endorsement 10, specifically contemplated that Novant would have coverage for so-called "disgorgement" unless a final adjudication in a lawsuit against Novant – not including a coverage lawsuit – established that Novant had received a financial gain it was not legally entitled to receive.

59.     Exclusion 4(m) does not apply to Novant's claim for coverage for the Kruger Settlement. There has been no final adjudication that would support application of Exclusion 4(m) to the Kruger Settlement. Furthermore, there will never be such a final adjudication. The Kruger Lawsuit has been settled, this lawsuit is not a "proceeding" within the meaning of that term as used in Exclusion 4(m), and there is no other proceeding pending in which such a final adjudication could occur. Accordingly, Exclusion 4(m) does not apply to the Kruger Settlement.

13

60. Travelers adopted Chubb's coverage positions. Travelers took the further position that, under an endorsement to the Travelers Policy, its coverage obligations to Novant were reduced by that percentage of Chubb's underlying policy limits that Chubb refused to pay.

61. The Insurers were aware of the near certainty that, if the Kruger Lawsuit proceeded to trial, Novant and the Individual Insureds would incur covered losses in an amount in excess of the remaining $23.6 million in combined policy limits and that little or none of the policy limits would remain to partially satisfy such a judgment.

62. Rather than make their limits – which would surely be paid if the Kruger Lawsuit did proceed to trial – available toward a settlement of the Kruger Lawsuit, the Insurers took advantage of the situation to Novant's detriment. The Insurers knew that if the Kruger Lawsuit were litigated to trial, the full limits of the Chubb Policy, and likely the Travelers Policy as well, would be paid in defense costs. Accordingly, the only possibility for Chubb to avoid paying its full limits, or for Travelers to avoid paying most or all of its limits, was to deny coverage for part of the Kruger Lawsuit and offer to contribute something less than the full limits of the Policies toward a settlement of the Kruger case, knowing that Novant would then likely decide to settle the case using its own funds in order to mitigate its exposure.

63. This is precisely what the Insurers did. The Insurers wrongfully and in bad faith adopted the coverage position that there was no coverage for the Kruger Settlement because it amounted to "disgorgement." The Insurers' position was contradicted by the language of the Chubb Policy, unsupported by law, and inconsistent with the facts. In particular, because the Insurers had expressly agreed, through the grant of coverage in the Chubb Policy and Exclusion 4(m), to provide coverage for so-called "disgorgement" absent a final adjudication in the Kruger

14

Lawsuit, and because there was no possibility that such a final adjudication would occur, the Insurers advanced their "disgorgement" theory in bad faith.

64.     In addition, the Insurers wrongfully and in bad faith refused to acknowledge their coverage obligations to the Individual Insureds. For example, Chubb took the position that it had no coverage obligations to the Plan Committee members. Even though the Plan Committee members are Insureds under the Chubb Policy and are named as Defendants John Does 1-40 in the Kruger Lawsuit, and even though the Plan Committee Members are parties to the Kruger Settlement who are responsible for payment of the settlement amount, Chubb took the position that "no individuals have been named in the complaint" and that "it is Novant itself that intends to engage in the settlement discussions [with the plaintiffs in the Kruger Lawsuit] and which ultimately will pay for any such settlement."

65.     Finally, the Insurers wrongfully and in bad faith refused to settle the Kruger Lawsuit within the limits of their respective policies, even though they had the opportunity to do so. The Insurers had an opportunity to settle the Kruger Lawsuit within the limits of their policies because of Novant's agreement to pay that portion of the Kruger Settlement above the combined limits of its insurance policies.

66.     The Insurers' settlement position was unrelated to Novant's actual exposure at trial, but instead was a transparent attempt to minimize their coverage obligations by exploiting the risk to their Insureds.

67.     No final judgment was entered in the Kruger Lawsuit establishing a deliberately fraudulent act or omission by any of the Novant Insureds. Furthermore, because the Kruger Lawsuit has been settled, no final judgment can be entered in the Kruger Lawsuit establishing a deliberately fraudulent act or omission by any of the Novant Insureds.

15

68. No final judgment was entered in the Kruger Lawsuit establishing a willful violation of any statute or regulation by any of the Novant Insureds. Furthermore, because the Kruger Lawsuit has been settled, no final judgment can be entered in the Kruger Lawsuit establishing a willful violation of any statute or regulation by any of the Novant Insureds.

69. No final judgment was entered in the Kruger Lawsuit establishing that any of the Novant Insureds gained any profit, remuneration or other advantage to which such insured was not legally entitled. Furthermore, because the Kruger Lawsuit has been settled, no final judgment can be entered in the Kruger Lawsuit establishing that any of the Novant Insureds gained any profit, remuneration or other advantage to which such insured was not legally entitled.

70. Chubb ultimately contributed just $4 million of its $15 million to the Kruger Settlement, at the same time refusing to acknowledge coverage for the Kruger Settlement and reserving the right to seek recoupment of this amount.

71. Travelers contends that, under the Attachment Endorsement, its limit of liability must be reduced by the percentage of the $15 million primary limits paid by Novant as part of any settlement. Accordingly, Travelers contributed approximately $4.05 million to the settlement of the Kruger case. Like Chubb, Travelers refused to acknowledge coverage for the Kruger Settlement and reserved the right to seek recoupment of this amount.

72. Novant paid the balance of the settlement – approximately $23.95 million.

73. The sums paid by Novant to resolve the Kruger Lawsuit are "Loss" covered by the Chubb and Travelers Policies.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

74. The preceding allegations are incorporated as if stated fully herein.

16

75. An actual controversy between Novant, on the one hand, and Chubb and Travelers, on the other hand, has arisen concerning the scope of coverage afforded under the Travelers Policy and the Chubb Policy and the obligations of the parties with respect to Novant's claims asserted under those policies.

76. Pursuant to N.C. Gen. Stat. § 1-253 *et. seq.*, Novant is entitled to a judgment declaring, pursuant to the Chubb Policy and Travelers Policy, that:

> a. The Chubb Policy and Travelers Policy are valid insurance policies entitling Novant to coverage;

> b. The Insurers have breached their obligations under the Chubb Policy and Travelers Policy by refusing to indemnify Novant for the full amount of the Kruger Settlement, up to the remaining limits of the Chubb Policy and Travelers Policy;

> c. Chubb and Travelers are obligated to indemnify Novant for the amount Novant paid toward the Kruger Settlement, up to the remaining limits of the Chubb and Travelers Policies;

> d. The Insurers cannot rely on Exclusion 4(m) to the Chubb Policy to limit coverage for the Kruger Settlement;

> e. Travelers cannot rely on any provision of the Travelers Policy to limit or deny coverage for the Kruger Settlement up to the remaining limits of the Travelers Policy;

> f. The Insurers consented to the settlement of the Kruger Lawsuit;

> g. Novant acted reasonably in deciding to settle the Kruger Lawsuit;

> h. The amount paid by Novant in the Kruger Settlement was reasonable;

17

i.      No portion of the Kruger Settlement constitutes uninsurable
        "disgorgement."

## SECOND CLAIM FOR RELIEF
### (Breach of Contract Against Chubb)

77.     The preceding allegations are incorporated as if stated fully herein.

78.     Pursuant to the Chubb Policy, Chubb is obligated to indemnify Novant for the full
amount of the Kruger Settlement, up to Chubb's remaining limit of liability.

79.     No exclusions in the Chubb Policy operate to bar or limit coverage to Novant for
the amounts paid toward the Kruger Settlement.

80.     Novant has satisfied the retention under the Chubb Policy and all other conditions
precedent to the Plaintiffs' recovery under the Chubb Policy have occurred or have been
satisfied, waived or excused.

81.     Alternatively, Chubb has not been prejudiced by any noncompliance with, or non-
occurrence of, any condition in the Chubb Policy, or has waived or is estopped from asserting
such noncompliance or non-occurrence as a ground for denying coverage for any portion of the
settlement of the Kruger Lawsuit up to Chubb's remaining limit of liability.

82.     Nevertheless, in breach of the Chubb Policy, Chubb has failed to indemnify
Novant for the amounts it has paid, up to Chubb's remaining limit of liability, to resolve the
Kruger Lawsuit.

83.     As a result of Chubb's breach of its insurance contract, Novant has incurred
damages in excess of $25,000.

18

### THIRD CLAIM FOR RELIEF
### (Breach of Contract Against Travelers)

84.     The preceding allegations are incorporated as if stated fully herein.

85.     Pursuant to the Travelers Policy, Travelers is obligated to indemnify Novant for the full amount of the settlement of the Kruger Lawsuit in excess of the remaining limits of the Chubb Policy, up to Travelers' limit of liability.

86.     No exclusions in the Travelers Policy operate to bar or limit coverage to Novant for the amounts paid toward the Kruger Settlement.

87.     All conditions precedent to the Plaintiffs' recovery under the Travelers Policy have occurred or have been satisfied, waived or excused.

88.     Alternatively, Travelers has not been prejudiced by any noncompliance with, or non-occurrence of, any condition in the Travelers Policy, or has waived or is estopped from asserting such noncompliance or non-occurrence as a ground for denying coverage for any portion of the settlement of the Kruger Lawsuit in excess of the remaining limits of the Chubb Policy, up to Travelers' limit of liability.

89.     Nevertheless, in breach of the Travelers Policy, Travelers has failed to indemnify Novant for the amounts it has paid, in excess of the remaining limits of the Chubb Policy and up to Travelers' limit of liability, to resolve the Kruger Lawsuit.

90.     As a result of Travelers' breach of its insurance contract, Novant has incurred damages in excess of $25,000.

### FOURTH CLAIM FOR RELIEF
### (Breach of the Duty of Good Faith and Fair Dealing / Punitive Damages Against Chubb)

91.     The preceding allegations are incorporated as if stated fully herein.

19

92. Pursuant to applicable law, the Chubb Policy includes an implied covenant of good faith and fair dealing that requires Chubb to conduct itself so that nothing is done which impairs the right of Novant to receive the benefit of the Chubb Policy.

93. Chubb has engaged in aggravated conduct, has acted in bad faith, and has acted willfully and maliciously by, among other things:

      a.    Failing to act fairly and in good faith with Plaintiffs;

      b.    Wrongfully refusing to acknowledge or fulfill its coverage obligations to the Individual Insureds;

      c.    Wrongfully denying coverage for the DLD Fees claim based on a legal theory unsupported by the facts or by North Carolina law;

      d.    Wrongfully refusing to indemnify Novant for settlement of the Kruger Lawsuit; and

      e.    Forcing Novant to contribute nearly $24 million of its own funds toward the settlement of the Kruger Lawsuit.

94. Chubb's conduct has been of an aggravated nature and amounts to tortious conduct independent of any breach of contract by Chubb.

95. Chubb's conduct has caused and is causing Novant damages, and Novant is entitled to recover from Chubb actual damages and punitive damages in an amount to be determined at trial but in no event less than $25,000.

**FIFTH CLAIM FOR RELIEF**
**(Breach of the Duty of Good Faith and Fair Dealing / Punitive Damages Against Travelers)**

96. The preceding allegations are incorporated as if stated fully herein.

66457946_8

97.     Pursuant to applicable law, the Travelers Policy includes an implied covenant of good faith and fair dealing that requires Travelers to conduct itself so that nothing is done which impairs the right of Novant to receive the benefit of the Travelers Policy.

98.     Travelers has engaged in aggravated conduct, has acted in bad faith, and has acted willfully and maliciously by, among other things:

        a.     Failing to act fairly and in good faith with Plaintiffs;

        b.     Wrongfully refusing to acknowledge or fulfill its coverage obligations to the Individual insureds;

        c.     Wrongfully denying coverage for the DLD Fees claim based on a legal theory unsupported by the facts or by North Carolina law;

        d.     Refusing to indemnify Novant for settlement of the Kruger Lawsuit; and

        e.     Forcing Novant to contribute nearly $24 million of its own funds toward the settlement of the Kruger Lawsuit .

99.     Travelers' conduct has been of an aggravated nature and amounts to tortious conduct independent of any breach of contract by Travelers.

100.     Travelers' conduct has caused and is causing Novant damages, and Novant is entitled to recover from Travelers actual damages and punitive damages in an amount to be determined at trial but in no event less than $25,000.

**SIXTH CLAIM FOR RELIEF**
**(Unfair Claims Settlement Practices in Violation of**
**N.C. Gen. Stat. § 58-63-15 and § 75-1.1 Against Chubb)**

101.     The preceding allegations are incorporated as if stated fully herein.

102.     Chubb has committed unfair claim settlement practices in violation of N.C. Gen, Stat. § 58-63-15(11), including the following:

21

a.   Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b.   Refusing to pay claims without conducting a reasonable investigation based upon all available information;

c.   Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

d.   Compelling Novant to institute litigation to recover amounts due under the Chubb Policy by offering substantially less than the amounts Novant will ultimately recover in this action;

e.   Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

f.   Failing to promptly provide a reasonable explanation of the basis in the Chubb Policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

103.   Chubb's actions have been in or affecting commerce.

104.   Chubb's conduct as alleged herein has been unfair or deceptive and constitutes breaches of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.

105.   Novant has been damaged by Chubb's unfair claims settlement practices and unfair and deceptive trade practices in an amount in excess of $25,000.

106.   Novant is entitled to recover treble damages and attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.

**SEVENTH CLAIM FOR RELIEF**
**(Unfair Claims Settlement Practices in Violation of**

22

### N.C. Gen. Stat. § 58-63-15 and § 75-1.1 Against Travelers)

107.     The preceding allegations are incorporated as if stated fully herein.

108.     Travelers has committed unfair claim settlement practices in violation of N.C. Gen. Stat. § 58-63-15(11), including the following:

      a.     Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

      b.     Refusing to pay claims without conducting a reasonable investigation based upon all available information;

      c.     Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

      d.     Compelling Novant to institute litigation to recover amounts due under the Chubb Policy and Travelers Policy by offering substantially less than the amounts Novant will ultimately recover in this action;

      e.     Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

      f.     Failing to promptly provide a reasonable explanation of the basis in the Chubb Policy or Travelers Policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

109.     Travelers' actions have been in or affecting commerce.

110.     Travelers' conduct as alleged herein has been unfair or deceptive and constitutes breaches of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1,

66457946_8

111.    Novant has been damaged by Travelers' unfair claims settlement practices and unfair and deceptive trade practices in an amount in excess of $25,000.

112.    Novant is entitled to recover treble damages and attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.

WHEREFORE, Novant request that the Court:

1.    Order a trial by jury of all of Plaintiffs' claims that are so triable;

2.    Enter a judgment against each defendant for actual monetary damages in excess of $25,000;

3.    Enter a judgment against each Defendant for punitive damages for each action by the Defendant as to which Novant establishes a right to recover punitive damages in excess of $25,000;

4.    Enter a judgment against each Defendant pursuant to N.C. Gen. Stat. § 75-16 for treble damages for each violation of N.C. Gen. Stat. § 58-63-15 and/or N.C. Gen. Stat. § 75-1.1;

5.    Enter a judgment against each Defendant pursuant to N.C. Gen. Stat. § 75-16 for Plaintiffs' attorneys fees and costs in connection with each violation of N.C. Gen. Stat. § 58-63-15 and/or N.C. Gen. Stat. § 75-1.1;

6.    Enter a declaratory judgment declaring the parties' rights and obligations as set forth herein;

7.    Enter a judgment for the recovery by Novant of pre-judgment and post-judgment interest in accordance with applicable law; and

8.    Award such other and further relief as the Court deems just and proper.

66457946_8.

This the 25th day of April_____, 2017.

L. D. Simmons II /Josh w/ permission
L. D. Simmons, II
N.C. State Bar No. 12554
Joshua D. Davey
N.C. State Bar. No. 35246

McGUIREWOODS LLP
201 N. Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: 704-343-2000
Facsimile: 704-343-2000

*Attorneys for Plaintiffs*

25